413 A.2d 85.

# AIELLO CONSTRUCTION, INC. *et al vs.* NATIONWIDE TRACTOR TRAILER TRAINING AND PLACEMENT CORP.

APRIL 10, 1980.

PRESENT: Bevilacqua, C.J., Kelleher, Weisberger and Murray, JJ.

862

WEISBERGER, J.     This case comes before us on appeal from a judgment of the Superior Court which awarded damages to the plaintiffs for a breach of contract allegedly committed by the defendant when it failed to make certain installment payments required by the contract. The case was tried by a justice sitting without the intervention of a jury. The facts as found in his decision are as follows.

The plaintiffs, Aiello Construction, Inc., and Smithfield Peat Co., Inc., as joint venturers, entered into a written contract with defendant in March of 1973. The contract required plaintiffs to haul fill and perform grading work in order to bring a large area owned by defendant to an approximately level condition. The contract further provided that plaintiffs would remove ledge on a portion of the premises, grade eight inches of bank run gravel over the entire yard, grade two inches of crushed run gravel over the entire yard, and finally apply penetration and seal coats of oil topped by application of peastone. The surface was then to be rolled.

The defendant was in the trucking business and also engaged in the training and instruction of tractor-trailer operators. The yard area was to be used in the operation of this training enterprise.

In payment for the work to be performed and the material to be furnished, defendant agreed to pay $33,000 in five monthly installments of $6,600 each. The installments were to become due on April 15, May 15, June 15, July 15, and August 15, all during the year 1973. The contract provided that any amount not paid would bear a service charge of 1½ percent per month.

The plaintiffs began work in late March 1973 and continued the work until on or about May 10, 1973, at which time all of the preliminary work had been done save applying and grading the two inches of crushed run gravel, which was a prerequisite to the performance of the oiling. The plaintiffs then stopped work to allow the ground to settle. Meanwhile, defendant paid the monthly installment that was due on April 15. Thereafter, defendant did not pay the May installment, although over a period from June to August of 1973 it did make partial payments which, when added to the April installment, aggregated $10,500. No further payments were made, and the president of the defendant company indicated that funds were not available to make the payments that were due. As a result of the failure to make payments, plaintiffs did not resume work. The plaintiffs brought the instant action for breach of contract. The defendant filed a counterclaim which alleged that plaintiffs were in breach of the agreement between the parties because they did not complete the work for which they had received payment. The defendant's counterclaim also contained a count which sounded in negligence.

The trial justice found as a fact that defendant was in breach of the contract and that this breach relieved plaintiffs of the obligation to perform any further work under the contract. He further found that defendant was not entitled to recover on its negligence claim. The trial justice awarded dam-

ages for the breach of contract by calculating the costs which plaintiffs had incurred in the performance of the work up to the time they withdrew from the project as a result of the breach. He found that the costs amounted to $21,500. To this sum he added $3,000 which he determined from the testimony to be the profit which plaintiffs would have made had the contract been completely performed by both parties. From the sum of $24,500 the trial justice deducted the payments made by defendant in the amount of $10,500. He ordered judgment to enter for plaintiffs in the amount of $14,000 together with interest at the rate of 8 percent per annum from the time of filing of the complaint to the date of judgment. He found the theories underlying defendant's counterclaim difficult to perceive and determined that defendant was entitled to no compensation or diminution of the award of damages. Thus judgment was entered for the plaintiffs for $16,800. This appeal ensued.

The defendant raises a number of points in support of its appeal. It first argues that the trial justice erred as a matter of fact and law in finding that defendant had breached the contract in such a way as to excuse plaintiffs for not completing the work. In regard to the findings of fact, this case involved conflicting testimony offered by witnesses presented by both parties. The trial justice found plaintiffs' witnesses more credible and in some instances found the testimony of defendant's witnesses of little or no probative value. It is well settled that we cannot disturb the finding of a trial justice unless the adverse party is able to show that in resolving testimonial conflicts the trial justice misconceived or overlooked material evidence or was otherwise clearly wrong. *Salo Landscape & Construction Co.* v. *Liberty Electric Co.*, 119 R.I. 269, 272, 376 A.2d 1379, 1381 (1977); *Gim* v. *Jan Chin, Inc.*, 117 R.I. 39, 43, 362 A.2d 143, 146 (1976); *Silvia* v. *Wicks*, 116 R.I. 545, 547-48, 359 A.2d 33, 34 (1976). In respect to the challenge to the legal validity of the trial justice's holding that failure to pay installments on a construction contract is a breach that would excuse further performance, our holding in *Salo Landscape & Construction Co.* v. *Liberty*

*Electric Co.*, 119 R.I. 269, 376 A.2d 1379 (1977), is dispositive. There we observed that in the event an owner fails to pay an installment due on a construction contract, such owner "is guilty of a breach that goes to the essence of the contract and that entitles the injured party to bring an action." 119 R.I. at 274, 376 A.2d at 1382. A similar holding may be found in *Pelletier* v. *Masse*, 49 R.I. 408, 410-11, 143 A. 609, 610 (1928), wherein the court noted that nonpayment of an installment due may justify the contractor in refusing to continue the work and in bringing an action on the contract for damages for its breach or quantum meruit for reasonable compensation for what the contractor has done. Under such circumstances, the court suggested, an action on the contract for the amount of the installment due would be inappropriate. *Id.* at 411, 143 A. at 610. *See also* 3A *Corbin on Contracts* §692 (1960); Restatement *Contracts* §346 (1932). Thus, the determination by the trial justice that defendant was solely responsible for the breach of the contract was amply supported by the evidence in the case and by the applicable law.

The defendant next contends that ambiguities in the contract should be resolved against plaintiffs. However meritorious this principle may be, the trial justice found no ambiguities in the contract, and neither do we. Hence, this argument is unavailing.

The defendant further argues that the contract was indivisible and that failure to pay an installment would not excuse the refusal on the part of plaintiffs to complete the work. Our holding in respect to the first argument is also dispositive of this contention. Since the breach by defendant went to the essence of the contract, plaintiffs were excused from further performance.

The defendant argues that the trial justice did not correctly assess damages. He cites in support of his argument *George* v. *George F. Berkander, Inc.*, 92 R.I. 426, 169 A.2d 370 (1961). In that case the rule of damages for breach of contract was stated to be such "as will serve to put the injured party as

close as is reasonably possible to the position he would have been in had the contract been fully performed." *Id.* at 430, 169 A.2d at 372. It is precisely this rule that the trial justice attempted to apply. Although the measure of damages may be variously stated under the principle of our holding in *Berkander*, certain alternatives are well set forth in Restatement *Contracts* §346(2) as follows:

> "For a breach by one who has promised to pay for construction, if it is a partial breach the builder can get judgment for the installment due, with interest; and if it is a total breach he can get judgment, with interest so far as permitted by the rules stated in §337, for either

> "(a) the entire contract price and compensation for unavoidable special harm that the defendant had reason to foresee when the contract was made, less installments already paid and the cost of completion that the builder can reasonably save by not completing the work; or

> "(b) the amount of his expenditure in part [pe]rformance of the contract, subject to the limitations stated in §333."[1]

The general rules set forth in the Restatement are further elucidated by the commentary. A portion of the comment on subsection (2) of Restatement §346 reads as follows:

> "*h.* Another common form of stating the measure of

---

[1]Restatement *Contracts* §333 (1932) reads in part as follows:

"(a) Such expenditures are not recoverable in excess of the full contract price promised by the defendant.

"(b) Expenditures in preparation are not recoverable unless they can fairly be regarded as part of the cost of performance in estimating profit and loss.

"(c) Installments of the contract price already received and the value of materials on hand that would have been consumed in completion must be deducted.

"(d) If full performance would have resulted in a net loss to the plaintiff, the amount of this loss must be deducted, the burden of proof being on the defendant."

recovery is as follows: Damages, measured by the builder's actual expenditure to date of breach less the value of materials on hand, plus the profit that he can prove with reasonable certainty would have been realized from full performance. * * * The builder has a right to his expenditures as well as his profits, because payment of the full price would have reimbursed those expenditures in full and given him his profit in addition * * *."

An examination of the record in this case discloses that the trial justice scrupulously followed this method of assessment of damages, that his findings of fact were amply supported by the evidence, and that he did not overlook or misconceive the evidence in arriving at his conclusion. Although we approved of a quantum meruit action in *Salo Landscape & Construction Co.* v. *Liberty Electric Co.*, 119 R.I. at 274-75, 376 A.2d at 1382, we recognized alternative remedies in *Pelletier* v. *Masse*, 49 R.I. at 410-11, 143 A. at 610. In applying these alternatives, a court must select the most appropriate remedy depending upon the factual posture of the case and the election of remedy by the plaintiff. The remedy selected by the trial justice in this case was appropriately relevant to the factual posture and the remedy sought by plaintiffs. Therefore, the trial justice cannot be faulted for his assessment of damages either in regard to the law or to the facts.

The defendant argues that the trial justice erred in determining that certain evidentiary offerings in support of its counterclaim were irrelevant. The trial justice obviously considered many elements of defendant's counterclaim to be frivolous. Some of the claims relating to damage to defendant's business and property caused by plaintiffs' negligence and the removal of a chain-link fence were considered to be "ridiculous" by the trial justice in light of the totality of evidence in the case. It was the task of the trial justice to consider relevance of evidence relating to damages in the light of his determination that defendant was at fault for breach of this contract and in the light of the failure of defendant to lay

a foundation which established liability of plaintiffs for such damages. Such determinations of relevance normally are considered to be within the discretion of the trial justice. In the absence of abuse of discretion, such evidentiary rulings will not constitute a basis for reversal. *Gaglione* v. *Cardi,* 120 R.I. 534, 538, 388 A.2d 361, 363 (1978). We have noted that it is the burden of the party opposing such evidentiary rulings to establish that the proposed evidence was material and that its exclusion had a prejudicial influence on the decision of the court. *Atlantic Paint & Coatings, Inc.* v. *Conti,* 119 R.I. 522, 526-27, 381 A.2d 1034, 1036 (1977); *Mercurio* v. *Fascitelli,* 116 R.I. 237, 244, 354 A.2d 736, 740 (1976). We believe that defendant in the case at bar has failed to sustain such a burden.

Finally, the defendant contends that the trial justice was in error in awarding interest to the plaintiffs at 8 percent per annum from the date of the filing of the complaint. The defendant argues that G.L. 1956 (1969 Reenactment) §9-21-10[2] is inapplicable since the contract provided for interest at the rate of 1½ percent per month on any installments due and unpaid. The trial justice held that the interest rate contained in the contract was inapplicable since the plaintiffs did not bring suit on the contract, but for breach thereof. We believe this holding to be correct since the trial justice found that the plaintiffs had not sufficiently performed under the contract so as to be entitled to the full contract price. The applicable statute in force at the time of the rendition of this judgment could well be argued to have re-

---

[2]General Laws 1956 (1969 Reenactment) §9-21-10, as amended by P.L. 1976, ch. 146, §1, and further amended by P.L. 1977, ch. 10, §1 (which became effective March 21, 1977, three days prior to the date of entry of judgment in this case), reads as follows:

"In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of eight per cent (8%) per annum thereon from the date the cause of action accrued which shall be included in the judgment entered therein. This section shall not apply until entry of judgment or to any contractu[al] obligation where interest is already provided or as to any condemnation action."

quired interest to be computed from the time of accrual of the action. The statute as it read up until three days prior to rendition of judgment did provide for "interest at the rate of eight per cent (8%) per annum thereon from the date of commencement of the action which shall be included in the judgment entered therein." The interest provided in the contract, if applicable, would have been at the rate of 18 percent per annum. Thus, if the trial justice was in error in assessing interest in accordance with the statute that had previously been in force as opposed to the statute as it had been amended just prior to entry of judgment, or if he was in error in assessing statutory interest rather than the interest set forth in the contract, this error could scarcely be prejudicial to the defendant. Indeed, the trial justice's assessment of interest was the least onerous to the defendant of all available computations. Although the plaintiffs agree that the trial justice erred in the computation of interest inasmuch as the plaintiffs would now prefer either the 18 percent as provided in the contract or 8 percent interest from the date of accrual of the cause of action, since the plaintiffs have not appealed in this case they have no standing to challenge the interest awarded. Thus we hold that the trial justice committed no prejudicial error in his award of interest on the judgment.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the case is remitted to the Superior Court.

Mr. Justice Doris did not participate.

*Oster, Groff & Prescott, George M. Prescott,* for plaintiffs.

*James Cardono,* for defendant.